# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL F. SIKORA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. |
| ) | |
| UPMC, a Pennsylvania non-stock ) | |
| non-profit corporation, a/k/a ) | |
| UPMC Health System, and the ) | |
| UPMC Health System and AFFILIATES ) | |
| NON-QUALIFIED SUPPLEMENTAL ) | |
| BENEFIT PLAN ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

**AND NOW** comes Plaintiff, Paul F. Sikora, by and through his attorneys, Michael E. Hoover, Esquire, and Diefenderfer Hoover McKenna & Wood, LLP, and, pursuant to Rule 3 Fed.R.Civ.P., and The Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. §§ 1001, et.seq.)(hereinafter referred to as "***ERISA***"), hereby sets forth causes of action against Defendants for compensatory damages and/or declaratory relief, of which the following are statements:

## GENERAL AVERMENTS

### Parties

1. Plaintiff, Paul F. Sikora, is an adult individual who resides, and has at all times material hereto resided, in Allegheny County, Pennsylvania.

2. Defendant, UPMC a/k/a UPMC Health System (hereinafter referred to as "***UPMC***"), is a non-stock non-profit corporation organized and existing under the laws of the Commonwealth of Pennsylvania with offices located at U.S. Steel Tower, 600 Grant Street, Pittsburgh, Allegheny County, Pennsylvania 15219.

3. Defendant, the UPMC Health System and Affiliates Non-Qualified Supplemental Benefit Plan (hereinafter referred to as the "***Plan***"), has at all times since January 1, 2002, through the current date been, and continues to be, an "employee pension benefit plan" as defined in Section 3 of ERISA [29 U.S.C. § 1002 (2)(A)] duly established and continuously maintained by UPMC. A true, correct, and genuine copy of the document setting forth the terms and provisions of the Plan as originally adopted and made effective January 1, 2002 (hereinafter referred to as the "***Plan Document***") is attached hereto as Exhibit "A" and made a part hereof.

4. The Plan is a single employer plan and not a "multiemployer plan" as such term is defined in Section 3 of ERISA [29 U.S.C. § 1002 (37)].

## Jurisdiction

5. Jurisdiction is conferred upon this Court by the provisions of Section 502 of ERISA [29 U.S.C. § 1132 (e)].

6. All of the acts complained of in this action occurred within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

## Allegations of Fact

7. Plaintiff was first employed by UPMC in April, 1983, and Plaintiff remained continuously in the employment of UPMC from such time until Plaintiff voluntarily terminated his employment with UPMC on or about December 2, 2011 (hereinafter referred to as the "***Plaintiff's Termination Date***").

8. Plaintiff was at no time during his employment with UPMC a party to any employment agreement with UPMC or any agreement of any kind with UPMC that contained a restrictive or noncompetition provision or covenant, a no solicitation provision or covenant, or a provision or covenant in any way relating to the nondisclosure of confidential information.

9. Plaintiff had no involvement of any kind in the establishment of the Plan or the negotiation or formulation of the terms of the Plan or the Plan Document.

10. Plaintiff had no knowledge of the existence of the Plan or any of the terms of the Plan until on or about March 1, 2008, when Plaintiff was notified that he had been approved by the UPMC Compensation Committee of the Board of UPMC to become a "Participant" in the Plan, as that term is defined in Section 1.01 (q) of the Plan Document, which participation was to be effective as of March 1, 2008, and Plaintiff was provided with a copy of the Plan Document.

11. Effective on or about January 1, 2011, UPMC adopted an amendment to Section 1.01 (p) of the Plan Document to the effect that the term "Normal Retirement Date" would in addition to meaning "the date a Participant attains age 65" also mean the date on which a Participant's "age and UPMC retirement service in years (generally defined as years in which the Participant was paid (for) at least 1,000 hours in the year) equals 75". A copy of the 2011 Benefits Overview document received by the Plaintiff and notifying him of the aforementioned amendment to the definition of the term "Normal Retirement Date" as set forth in the Plan Document is attached hereto as Exhibit "B" and made a part hereof.

12. Other than the aforementioned 2011 Benefits Overview document (Exhibit B hereto), Plaintiff at no time received any other notice of any amendment to the Plan as referred to in, and required by, Section 8.01 of the Plan Document or any summary plan description of the Plan or summary of any modification of the terms of the Plan or any document purporting to be a summary plan description or summary of any modification of the terms of the Plan, as referred to in, and/or required by, Sections 102 and 104 of ERISA (29 U.S.C. §§ 1022 and 1024).

13. Plaintiff's UPMC retirement service plus his age exceeded 75 as of January 1, 2011, and so, pursuant to the aforementioned amended definition of the term "Normal

3

Retirement Date", Plaintiff's Normal Retirement Date was January 1, 2011, and at all times on and after January 1, 2011, Plaintiff was one hundred percent (100%) vested in the Plan and/or his "Account" as that term is defined in Section 1.01 (a) of the Plan Document.

14. Plaintiff remained in the employment of UPMC continuously from and after April, 1983, until Plaintiff's Termination Date and Plaintiff has not been reemployed by UPMC at any time subsequent to Plaintiff's Termination Date.

15. As of Plaintiff's Termination Date, the balance of Plaintiff's Account was $59,369.90.

16. By letter dated December 13, 2011, Plaintiff was notified that if Plaintiff did not "elect a deferred commencement date by January 12, 2012", the balance of Plaintiff's Account would be distributed to Plaintiff "not later than March 1, 2012".

17. Plaintiff has at no time elected a deferred commencement date.

18. Subsequent to Plaintiff's Termination Date, Plaintiff made a timely application for a lump sum distribution of the balance of the retirement benefits in his Account that were accrued and due and owing to Plaintiff as a vested participant in the Plan as of Plaintiff's Termination Date. Thereafter, Plaintiff at no time received a written decision from the Committee, as that term is defined in Section 1.01 (g) of the Plan Document (hereinafter referred to as the "*Plan Committee*"), which written decision was required pursuant to Section 7.07 (b) of the Plan Document.

19. Despite having not received an initial written decision from the Plan Committee as set forth above, on or about March 29, 2012, Plaintiff made a timely request for redetermination by the Plan Committee as provided for in Section 7.07 (c) of the Plan Document.

20. By letter dated May 24, 2012, Gregory K. Peaslee, who was then and there acting as the authorized designee of the Plan Committee, notified Plaintiff that an extension of time would be required for the Plan Committee to respond to Plaintiff's request for redetermination.

21. By letter dated July 23, 2012, a copy of which is attached hereto as Exhibit "C" and made a part hereof, Plaintiff was notified by Gregory K. Peaslee, who was then and there acting as the authorized designee of the Plan Committee, that all rights and benefits due Plaintiff under the Plan had been forfeited due to the fact that Plaintiff had not entered into a written Post Retirement Service Agreement, which document was never presented to Plaintiff until on or about April 10, 2012, and which Plaintiff had never seen prior to such date. A copy of such Post Retirement Service Agreement document as first presented to the Plaintiff on or about April 10, 2012, is attached hereto as Exhibit "D" and made a part hereof.

22. The aforementioned assertion by the Defendants that all rights and benefits due Plaintiff under the Plan had been forfeited is based upon an assertion by the Plan Committee that the vesting and nonforfeiture provisions of ERISA do not apply to the Plan because the Plan qualifies as a "Top Hat Plan" under the provisions of Section 201 (2) of ERISA [29 U.S.C. § 1051 (2)] in that the Plan is unfunded and maintained primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees.

23. Subsequent to July 23, 2012, despite repeated demands by counsel for Plaintiff, Defendants have at all times failed and refused to provide Plaintiff or his counsel with anything more than the barest minimum of information and any supporting documentation to support Defendants' assertion that the Plan qualifies as a "Top Hat Plan" under the provisions of Section 201 (2) of ERISA [29 U.S.C. § 1051 (2)] and applicable case law.

24. As a direct and proximate result of the wrongful actions of the Defendants, Plaintiff has incurred, and will continue to incur, reasonable attorneys' fees and costs of suit in pursuing this action, which Plaintiff is entitled to recover pursuant to Section 502 of ERISA [29 U.S.C. § 1132 (g)(1)].

## CLAIMS FOR RELIEF

### COUNT I

### Wrongful Failure to Pay Retirement Benefits in Violation of ERISA

25. Paragraphs 1 through 24 hereof are incorporated herein by reference as if set forth at length.

26. The Plan does not meet the ERISA definition of a "Top Hat Plan" as set forth in Section 201 (2) of ERISA [29 U.S.C. § 1051 (2)], and is, therefore, not exempt from the requirements of ERISA relating to nonforfeiture of vested benefits.

27. Because the Plan does not qualify as a "Top Hat Plan" all of the retirement benefits due to Plaintiff by the Plan are nonforfeitable as provided in Section 203 of ERISA [29 U.S.C. § 1053 (a)] and are, therefore, currently due and owing to the Plaintiff.

### COUNT II

### Wrongful Conditioning of the Payment of Retirement Benefits on the Signing of the Post Retirement Service Agreement in Violation of ERISA

28. Paragraphs 1 through 27 hereof are incorporated herein by reference as if set forth at length.

29. Section 402 of ERISA [29 U.S.C. § 1102 (a)(1)] mandates that every employee benefit plan shall be established pursuant to a written instrument and that plan administrators provide benefits in accordance with the documents and instruments governing the plan.

30. Section 4.01 of the Plan Document conditions eligibility to receive retirement benefits under the Plan upon:

   A. the Participant's remaining employed until his or her Normal Retirement Date;

   B. the Participant's entering into a Post Retirement Service Agreement with UPMC; and,

   C. the Participant's satisfaction of his or her Post Retirement Service Agreement with UPMC.

31. Section 1.01 (t) of the Plan Document defines the term "Post Retirement Service Agreement" as "the agreement entered into between the Employer and a Participant which sets forth that for one (1) year following the Participant's retirement he or she will: (1) provide substantial consulting services to the Employer to, among other things, assist those who are taking on the Participant's responsibilities and (2) refrain from working for a competitor of the Employer or the Related Entities. The Post Retirement Service Agreement can be the employment agreement between the Employer and the Participant where that agreement includes the two (2) provisions set out above".

32. Plaintiff at no time had an employment agreement of any kind with the Employer or the Related Entities, namely UPMC or any entity related to UPMC.

33. Plaintiff was at no time provided with a copy of the Post Retirement Service Agreement (Exhibit D hereto) until on or about April 10, 2012, or one hundred and thirty (130) days after the termination of Plaintiff's employment at UPMC. Plaintiff has at no time been provided with a copy of either Appendix A or Appendix B to the Post Retirement Service Agreement as referred to therein.

34. The Post Retirement Service Agreement document (Exhibit D hereto) as presented to the Plaintiff for the first time on or about April 10, 2012, in addition to the

7

provisions referred to in the Plan Document as set forth in paragraph 31 above, such Post Retirement Service Agreement document (Exhibit D hereto):

    A.    changed the wording "working for a competitor of the Employer or the Related Entities" as set forth in Section 1.01 (t) of the Plan Document to "refrain from directly or indirectly establishing or participating in, financially or otherwise, personally or in association with others, any enterprise which is engaged in providing substantially the same services or products (individually or in the aggregate) as Employer or UPMC . . . within 120 miles of Pittsburgh, Pennsylvania";

    B.    included a "non-solicitation" provision which was not included, or in any way referenced, anywhere in the Plan Document; and,

    C.    included a provision relating to nondisclosure of confidential information and an expansive definition of the term "Confidential Information" which confidentiality provision and definition of the term "Confidential Information" were not included, or in any way referenced, anywhere in the Plan Document.

35. Section 402 of ERISA [29 U.S.C. § 1102 (a)(1)] mandates that every employee benefit plan shall be established and maintained pursuant to a written instrument and Section 404 of ERISA [29 U.S.C. § 1104 (a)(1)(D)] mandates that plan administrators provide benefits in accordance with the documents and instruments governing the plan.

36. The failure to provide a copy of the Post Retirement Service Agreement document to the Plaintiff until on or about April 10, 2012, or one hundred and thirty (130) days after Plaintiff's Termination Date, violated the ERISA mandates referred to above that employee pension benefit plans be in writing so as to provide employees with notice of their rights and obligations under the plan and constituted arbitrary, illegal, capricious, unreasonable, and bad faith conduct on the part of the Plan Administrator and the Plan.

37. The failure to provide Plaintiff with any notice that his receipt of retirement benefits under the Plan would be conditioned upon Plaintiff's agreement to the confidentiality and non-solicitation provisions as were contained in the Post Retirement Service Agreement

document first presented to him on or about April 10, 2012, but not contained, or in any way referenced, in the Plan Document, violated the ERISA mandates referred to above that employee pension benefit plans be in writing so as to provide employees with notice of their rights and obligations under the plan and constituted arbitrary, illegal, capricious, unreasonable, and bad faith conduct on the part of the Plan Administrator and the Plan.

## COUNT III

### Breach of Contract to Pay Retirement Benefits

38. Paragraphs 1 through 37 hereof as are incorporated herein by reference as if set forth at length.

39. The Plan constituted a unilateral contract between the Defendants and the Plaintiff.

40. By remaining in the employ of the Defendants until after his Normal Retirement Date, Plaintiff fully performed under the aforementioned unilateral contract.

41. Because Plaintiff fully performed under such unilateral contract, such unilateral contract became irrevocable upon Plaintiff's retirement on Plaintiff's Termination Date, and the provisions of the Plan Document which existed as of Plaintiff's Termination Date, were locked in as to the Plaintiff.

42. Subsequent to Plaintiff's Termination Date, Defendants asserted that unilateral amendments as reflected in paragraph 34 above had been made to the Plan Document, which amendments were reflected in the Post Retirement Service Agreement document as presented for the first time to Plaintiff on or about April 10, 2012, or over four (4) months after Plaintiff's Termination Date.

43. Prior to April 10, 2012, Defendants had at no time provided Plaintiff with any written notice of the unilateral amendments to the Plan Document as reflected in paragraph 34 above, which written notice Defendants were required to provide pursuant to the clear and unambiguous provisions of Section 8.01 of the Plan Document.

44. Defendants' failure to provide Plaintiff with written notice of the aforementioned unilateral amendments to the Plan Document constituted a breach of such unilateral contract by the Defendants.

45. The provisions of the Plan set forth in the Plan Document as they relate to non-competition are unenforceable by Defendants in that they:

    A. were imposed post-employment and not incident to the establishment of an employment relationship between UPMC and the Plaintiff and not supported by consideration;

    B. were not reasonably necessary for the protection of Plaintiff's employer, Defendant, UPMC;

    C. were unreasonably unlimited as to geographic extent and/or the one (1) year time period as it related to the Plaintiff was unreasonable;

    D. were not reasonably related to any legitimate business interest of the Defendants;

    E. were for the sole purpose of restraining competition by UPMC; and/or,

    F. would unreasonably restrict Plaintiff's ability to earn a living.

46. The provisions of the Plan set forth in the Plan Document as they relate to Plaintiff's obligation to provide substantial consulting services to UPMC for one (1) year following Plaintiff's retirement are unenforceable by Defendants in that they provide for no remuneration by Defendants to Plaintiff for such services and are otherwise not supported by consideration as well as unreasonably vague.

47. By reason of the Defendants' aforementioned breach of the subject unilateral contract, Plaintiff has sustained damages in the amount of $59,369.90, the balance of Plaintiff's Account as of Plaintiff's Termination Date.

## COUNT IV

### Wrongful Failure to Provide Notice of Amendments to Plan in Violation of ERISA

48. Paragraphs 1 through 47 hereof as are incorporated herein by reference as if set forth at length.

49. Defendants failure to provide Plaintiff and the other Participants in the Plan with a written summary description of the aforementioned unilateral amendments to the Plan Document within 210 days after the end of the plan year in which the change(s) was or were adopted constituted a violation of Section 104 (b) of ERISA [29 U.S.C. §1024 (b)] requiring such written summary description or notice of unilateral amendments to the Plan Document within such 210 day time period.

50. The aforementioned failure by the Defendants to follow the aforementioned mandates of ERISA constituted arbitrary and capricious conduct on the part of the Defendants.

51. Subsequent to July 23, 2012, despite repeated demands by counsel for Plaintiff, Defendants have at all times failed and refused to provide Plaintiff or his counsel with any document or documents which Defendants contend constituted a written notice or summary description of the aforementioned unilateral amendments which was provided to the Plaintiff and the other Participants in the Plan other than the 2011 Benefits Overview document (Exhibit B hereto).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

A. Ordering Defendants to pay to Plaintiff all of the $59,369.90 in retirement benefits due and owing to Plaintiff, which was the balance of Plaintiff's Account, as that term is defined in Section 1.01 (a) of the Plan Document, as of December 2, 2011;

B. Declaring that the Plan does not qualify as a "Top Hat Plan" pursuant to Section 201 (2) of ERISA [29 U.S.C. § 1051 (2)], and therefore all vested rights and benefits due and owing to Plaintiff and other Participants in the Plan are nonforfeitable;

C. Awarding Plaintiff a money judgment for all sums due and owing to the Plaintiff by the Defendants;

D. Awarding Plaintiff prejudgment interest from December 2, 2011, to the date of judgment;

E. Awarding Plaintiff attorneys fees, costs of suit and any and all other reasonable costs incurred, as provided for in ; and,

F. Granting Plaintiff such other further relief as this Court may deem just and proper.


Dated: December 18, 2012         /s/ Michael E. Hoover
                                 Michael E. Hoover
                                 PA 27574
                                 DIEFENDERFER HOOVER McKENNA & WOOD, LLP
                                 310 Grant Street, Suite 1420
                                 Pittsburgh, PA  15219-2201
                                 (412) 471-1100
                                 Tel # (412) 471-1100 Fax # (412) 471-5125
                                 mhoover@verizon.net

                                 Counsel for Plaintiff, Paul F. Sikora